## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| GLORIA E. SWANSON, | ) | |
| | ) | |
| *Plaintiff*, | ) | No. 20 C 6356 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| PNC BANK, N.A., | ) | |
| | ) | |
| *Defendant*. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Gloria E. Swanson ("Swanson") filed suit against Defendant PNC Bank, N.A. ("PNC") alleging racial discrimination in lending in violation of the Equal Credit Opportunity Act, 15 U.S.C. §1691 *et seq*. PNC moves to dismiss the Complaint for failure to state a claim and lack of standing. Fed. R. Civ. P. 12(b)(1); (6). For the reasons that follow, PNC's motion to dismiss [12] is granted.

## BACKGROUND

The following factual allegations are taken from Swanson's Complaint (Dkt. 1) and are assumed true for purposes of this motion. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016). On May 23, 2020, Swanson and her nephew, Melvin Allen, applied for a car loan as co-signers at the Grossinger Toyota dealership in Lincolnwood, Illinois. (Dkt. 1 at ¶ 4). Unbeknownst to Swanson, the Toyota dealership submitted separate credit loan applications to PNC Bank and to Wells Fargo Financial. (*Id.* at ¶ 6). Toyota Financial subsequently approved a loan to Swanson and Allen and they purchased the car they sought, a 2014 Chevrolet Cruz. (*Id.*)

On May 26, 2020, Swanson received a letter from PNC Bank stating that PNC was denying Swanson's application for the car loan. (*Id.* at ¶ 8). PNC's letter listed four reasons for the denial:

1

(1) "[s]erious delinquency[,]" (2) [r]atio of balance to limit on bank revolving or other revolving accts too high[,]" (3) "[n]umber of accounts with delinquency[,]" and (4) "[l]ength of time accounts have been established[.]" (*Id.*) The letter indicated Swanson had a 787 credit score and that PNC's decision to deny credit was based on information from the credit reporting agency Experian. (*Id.* at ¶¶ 8–9).

The reasons given for the denial seemed inaccurate to Swanson and incompatible with her high credit score. (*Id* at ¶ 10). Swanson does not have negative credit or excessive debt and in fact has a credit score of 787. (*Id.* at ¶¶ 6, 11). Swanson believed that PNC declined her application not for the reasons given, but rather due to her race. (*Id.* at ¶ 11). Swanson does not allege that PNC knew she was African-American, but contends that PNC must have known from her application that she and her co-applicant lived in a predominantly black zip code and inferred from this that she was African-American. (*Id.*)

Swanson contacted Experian, the credit reporting agency identified in the letter, for a copy of her credit report. (*Id.* at ¶ 12). Experian encouraged Swanson to contact PNC Bank directly. (*Id.*) Swanson then wrote to the Executive Offices of PNC Bank. (*Id.* at ¶ 13). Rochelle Bencho, a PNC employee, attempted to call and email Swanson in response to her inquiry, but Bencho and Swanson were unable to get in touch with one another for a period of days. (*Id.* at ¶¶ 13–16). Swanson alleges Bencho deliberately called her home phone when Swanson was at work to avoid her. (*Id.* at ¶ 17).

On July 15, 2020, Bencho and Swanson finally talked on the phone. (*Id.* at ¶¶ 20–21). When Swanson asked about the untrue negative descriptions on PNC's denial letter, Bencho informed her that the denial letter for joint loan applications applies to both loan applicants— Swanson and her nephew Allen. (*Id.* at ¶ 21). Swanson did not accept this explanation because

Allen's name, credit score, and address did not appear on the denial letter that she received. (*Id.* at ¶ 22). Swanson does not allege whether the negative descriptions on the denial letter were accurate descriptions of Allen's credit history. Nor does she allege that her nephew also received a letter. Swanson requested a retraction letter from PNC and asked Bencho to provide her with written documentation of PNC's alleged policy of considering joint applicants' credit together. (*Id.* at ¶ 24).

On August 4, 2020, PNC sent Swanson a letter reiterating its policy of considering the credit histories of joint applicants together. (*Id.* at ¶ 27, Ex. 3). PNC explained that it lists all reasons for denial on its denial letter, does not distinguish which applicant's credit history was responsible and sends a letter to each applicant. (*Id.*) On October 27, 2020, Swanson, unsatisfied with PNC's explanation and convinced that PNC was covering up its racially discriminatory reasons for denying her and Allen's loan application, filed this suit.

## LEGAL STANDARD

When considering a motion to dismiss for failure to state a claim, the Court must construe the complaint "in a light most favorable to the nonmoving party, accept well-pleaded facts as true, and draw all inferences in the non-moving party's favor." *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016). The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The plaintiff need not plead "detailed factual allegations," but the short and plain statement must "give the defendant fair notice of what . . . the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must contain sufficient factual matter that when "accepted as true . . . 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570)). The Court is "not bound to accept as true a legal conclusion

3

couched as a factual allegation." *Olson v. Champaign Cty, Ill.,* 784 F.3d 1093, 1099 (7th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In reviewing the claims of a *pro se* plaintiff claims, the court construes the allegations liberally. *Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011).

A challenge to Article III standing is a challenge to the subject-matter jurisdiction of this Court. *Moore v. Wells Fargo Bank*, N.A., 908 F.3d 1050, 1057 (7th Cir. 2018). The plaintiff carries the burden of establishing that jurisdiction is proper. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014). "Because standing is 'not [a] mere pleading requirement[ ] but rather an indispensable part of the plaintiff's case, [it] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

**DISCUSSION**

PNC moves to dismiss Swanson's Complaint on three grounds. First, PNC asserts Swanson lacks standing to sue due to her lack of damages. Second, PNC argues Swanson has failed to sufficiently identify a cause of action to put PNC on notice of the claims against it. Finally, PNC asserts Swanson fails to plead sufficient facts to state a claim for race discrimination.

I.      **Standing**

PNC asserts Swanson lacks standing to sue due to her lack of economic damages. To establish standing, a plaintiff must show that she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a

favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). An injury in

fact is "an invasion of a legally protected interest which is (a) concrete and particularized" and

"(b) actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan*, 504 U.S. at 561. Concreteness

does not require tangible harm. *Spokeo, Inc.*, 136 S.Ct. at 1549. "For an injury to be

'particularized', it must affect the plaintiff in a personal and individual way." *Id.* at 1548. In the

discrimination context, a plaintiff "'personally denied equal treatment' by the challenged

discriminatory conduct" has suffered a concrete and particularized injury. *Carello v. Aurora*

*Policeman Credit Union*, 930 F.3d 830, 834 (7th Cir. 2019) (quoting *Allen v. Wright*, 468 U.S.

737, 755 (1984)). The non-economic dignitary harm caused by racial discrimination is "'one of

the most serious consequences'" of discrimination. *Id.* (quoting *Allen*, 468 U.S. at 755–56).

Swanson alleges she applied for credit, albeit indirectly, and that PNC denied her application based

on her race. (Dkt. 1 at ¶¶ 6, 11). Therefore, the alleged discriminatory denial of credit is an injury

in fact adequate to establish standing because Swanson has a legally protected interest in not being

discriminated against when applying for credit. Whether Swanson can actually state a claim of

racial discrimination on the facts alleged, however, is another issue entirely.

## II.      Equal Credit Opportunity Act Claim

### A. Notice

PNC argues Swanson's Complaint fails to identify a cause of action under which she claims

to have suffered discrimination. The Court finds the allegations are sufficient to place PNC on

notice that Swanson is pursuing a claim of discrimination in lending in violation of the Equal

Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 *et seq.*

Swanson explicitly references the ECOA multiple times in her complaint, (*see* Dkt. 1 at ¶¶ 4,

30, 34) and the Complaint consistently focuses on her allegations that PNC denied her application

for discriminatory reasons. (*Id*. at ¶¶ 11, 23, 27–29, 33). Swanson's civil cover sheet also identifies the claim as an ECOA claim. (Dkt. 2). Given the liberal interpretation this court gives to *pro se* allegations, this is adequate to provide PNC and the Court notice of a claim for race discrimination under the ECOA.

To the extent, Swanson intends to pursue claims under other causes of action, she has failed to allege them adequately. Although a heading in the Complaint references the Truth in Lending Act ("TILA"), 15 U.S.C § 1601 *et seq.*, this is little more than a throwaway reference. (Dkt. 1 at ¶¶ 4–5). Swanson does not reference TILA or any other common law or statutory claims elsewhere in her Complaint or contend in her response brief that she intends to pursue them. Thus, the Court assesses the viability of Swanson's claims under the ECOA only.

## B. Plausibility

The ECOA makes it illegal for creditors to "discriminate against any applicant, with respect to any aspect of a credit transaction … on the basis of race." 15 U.S.C. §1691(a)(1). To state a claim under the ECOA, Swanson must "allege … that the [defendant] treated her less favorably because of her race." *Estate of Davis v. Wells Fargo Bank*, 633 F.3d 529 (7th Cir. 2011). Upon reviewing the facts and drawing all reasonable inferences in Swanson's favor, the Complaint fails to plead a plausible claim of race discrimination.

Swanson does not allege PNC knew she was African-American when they evaluated her credit. Rather, Swanson claims PNC *must have assumed* she was African-American solely due to her zip code which she speculates was known by those who reviewed her application to be an area that is predominantly black. (Dkt. 1 at ¶ 11). Her support for this claim is simply that PNC knew her zip code. (*Id*. at ¶¶ 9–11). Swanson does not allege that PNC knew, or took steps to learn, that her zip code was in a predominantly black area. In fact, PNC's credit denial letter shows a return

address in Pittsburgh, Pennsylvania. (*Id*. at Ex. 1). Her speculation is even more tenuous in that

the Court would need to infer that PNC agents in Pennsylvania somehow know Chicago-area zip

codes and their corresponding demographics. In her responsive brief, not in her Complaint,

Swanson provides the demographic that her zip code, 60617, is over 56.2% African American.

(Dkt. 18 at 8). The U.S. Census data also shows that it is 37.2% Hispanic. *See* United States

Census Bureau, *2019 American Community Survey 5-Year Estimates*

https://data.census.gov/cedsci/table?q=ZCTA5%2060617%20and%20Ethnicity&tid=ACSDP5Y

2019.DP05&hidePreview=false. Again, the speculation that outsiders know what percentage of

African Americans live within a zip code is merely that – speculation – and no facts have been

alleged to support that speculation.

In *Walton v. First Merchants Bank*, the Seventh Circuit reviewed a similar complaint

alleging race discrimination against a bank in violation of the ECOA. 772 F. App'x 349 (7th Cir.

2019), *cert. denied*, 140 S. Ct. 233 (2019) (on appeal from motion to dismiss). There, plaintiff

cited to various problems with the bank's administration of her accounts as "clear" evidence of

race discrimination. *Id.* at 349-50. Affirming the dismissal of plaintiff's claims, the Court

observed:

> Here, [plaintiff] has alleged no facts suggesting discrimination. She only describes various
> problems with the Bank's administration of her accounts. She identifies no Bank
> employees—not even the individual defendants—who acted in a discriminatory manner.
> The only allusions to race are her two statements that white customers were not mistreated.
> But no factual content supports this allegation or explains her awareness of how the Bank
> allegedly treats its white customers. Her bare statements that the alleged customer-service
> failures were "clear" discrimination are insufficient.

*Id*. at 350. As in *Walton*, Swanson's complaint does not allege facts to support her conclusory

allegations that PNC clearly and obviously discriminated against her.

Swanson characterizes the series of missed phone calls between a PNC representative and

7

herself as a scheme to cover up racial discrimination because the representative repeatedly attempted to reach her at the wrong number. (*Id*. at ¶ 17). But without more, this conduct does little to suggest racial discrimination particularly when the representative eventually spoke to Swanson about her complaints. (*Id*. at ¶¶ 20–21). Further, Swanson does not claim that anyone at PNC posed questions or comments regarding her race. Swanson alleges PNC's credit denial "can only be attributed to race," but fails to meaningfully address PNC's explanation that the denial was based on a review of both her and her co-applicant Melvin Allen's credit history. (Dkt. 1 at ¶¶ 21–22). Notably, the Complaint does not mention Allen's credit score or state that the negative credit descriptors in the denial letter inaccurately described Allen's credit history. Thus, the Complaint does not establish that PNC erroneously denied Swanson credit in the first instance, further detracting from any inference of racial discrimination. The Complaint states a *possible* claim of discrimination— certainly discriminatory behavior is always possible— but it fails to state a plausible one.

Of course, Ms. Swanson knows this. She has filed a number of cases, including claims of discrimination, in the past that have been dismissed for lack of a factual basis. *See e.g.*, *Swanson v. Citibank, N.A.*, 614 F.3d 400, 406 (7th Cir. 2010) (reversed on other grounds) (affirming dismissal of claim against bank for falsely purporting to make federal loan funding available to all customers while actually intending to discriminate against African Americans); *Swanson v. Baker & McKenzie, LLP*, 527 F. App'x 572, 573 (7th Cir. 2013) (affirming dismissal of discrimination, retaliation, and defamation claims against former employer based on employer's representation that it could neither confirm nor deny Swanson's employment); *Swanson v. Horseshoe Hammond*, LLC, 445 F. App'x 868, 869 (7th Cir. 2011) (affirming dismissal of claims against casino for detaining Swanson after Swanson asked management to sign and enforce a directive to keep her

off the premises due to her gambling addiction); *Swanson v. City of Hammond, Ind.*, 411 F. App'x 913, 914 (7th Cir. 2011) (affirming dismissal of claims against police officers for ignoring her requests for medical attention due to a headache after officers arrested her for criminal trespass at a casino). Most recently, the Seventh Circuit warned Swanson that filing further frivolous lawsuits would result in sanctions:

> Swanson has become a frequent litigant, and the district judge observed that many of her contentions are weak if not frivolous. The judge warned Swanson that continuation of this campaign of litigation will lead to sanctions. Instead of taking that warning to heart, Swanson's appellate brief accuses the district judge of defamation. Blaming the judge is not a satisfactory response; the judge's warning was designed to help Swanson avoid sanctions. She must understand that further litigation of this kind will be penalized by the district court under Fed. R. Civ. P. 11 and by this court under Fed. R. App. P. 38.

*Swanson v. Baker & McKenzie, LLP*, 527 F. App'x 572, 573 (7th Cir. 2013) (affirming dismissal of, for a second time, discrimination, retaliation, and defamation claims against former employer based on employer's representation that it could neither confirm nor deny Swanson's employment). After over a decade of litigating in this circuit, Swanson is well aware of the federal pleading requirements.[1] Yet, Swanson fails to substantiate her present race discrimination claims with any factual allegations. For that reason, Swanson's ECOA claim is dismissed without prejudice.

**III.    Sanctions**

In addition to seeking dismissal of Plaintiff's complaint, Defendants seek sanctions against Swanson, arguing that her Complaint is meritless. The Court will not impose sanctions against Swanson without giving her an opportunity to respond fully to those accusations.   Therefore, the motion for sanctions is taken under advisement.  Swanson may file a response to that motion on

---

[1] Indeed, Swanson has been successful in securing settlements in some of her previous cases alleging discrimination. *See e.g.*, *Swanson et al. v. Citi et al.*, 09-cv-2344 (N.D. Ill. 2009) (ECOA race discrimination claim against Citibank); *Routen et al. v. JP Morgan Chase Bank, N.A.*, 10-cv-02694 (N.D. Ill. 2010) (ECOA race discrimination claim against JP Morgan).

or before 4/15/21.

## CONCLUSION

For the reasons stated herein, PNC's motion to dismiss [12] is granted and Swanson's

Complaint is dismissed without prejudice. Swanson may amend her Complaint consistent with

this Opinion and respond separately to the Motion for Sanctions on or before 4/15/21.

_____

Virginia M. Kendall
United States District Judge

Date: March 31, 2021