**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GLORIA E. SWANSON, | ) ) ) | |
| *Plaintiff*, | ) ) | No. 20 C 6356 |
| v. | ) ) | Judge Virginia M. Kendall |
| PNC BANK, N.A., | ) ) | |
| *Defendant*. | ) ) ) | |

## MEMORANDUM OPINION AND ORDER

On October 27, 2020, Plaintiff Gloria E. Swanson ("Swanson") sued Defendant PNC Bank, N.A. ("PNC") for race discrimination in lending in violation of the Equal Credit Opportunity Act ("ECOA), 15 U.S.C. §1691 *et seq*. PNC moved to dismiss the complaint and sought sanctions. (Dkt. 12). The Court granted PNC's motion, finding Swanson had not stated a claim for relief under the ECOA, and dismissed Swanson's complaint without prejudice. (Dkt. 25). The Court reserved the issue of sanctions. (*Id*.) On April 12, 2021, Swanson filed an amended complaint reiterating her race discrimination claim under the ECOA and adding a procedural due process claim under the Fourteenth Amendment. (Dkt. 26). PNC filed a renewed motion to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(6). On August 31, 2021, Swanson also filed a second motion for substitution of a judge. For the following reasons, Swanson's motion for substitution [40] is denied, PNC's motion to dismiss [33] is granted, and PNC's motion for sanctions [13] is denied.

## BACKGROUND

The factual allegations of the amended complaint are nearly identical to those in Swanson's original complaint and are set forth in further detail in this Court's previous order. *See Swanson v.*

1

*PNC Bank, N.A.*, No. 20 C 6356, 2021 WL 1209131, at *1–2 (N.D. Ill. Mar. 31, 2021). On May 26, 2020, PNC denied a car loan application filed on behalf of Swanson and her nephew, Melvin Allen. (Dkt. 26 at ¶ 8). PNC's denial notice listed four reasons for the denial: (1) "[s]erious delinquency[,]" (2) [r]atio of balance to limit on bank revolving or other revolving accts too high[,]" (3) "[n]umber of accounts with delinquency[,]" and (4) "[l]ength of time accounts have been established[.]" (*Id.*) The reasons given for the denial seemed inaccurate to Swanson and incompatible with her credit history and credit score. (*Id*. at ¶ 10). Swanson believed PNC declined her application not for the reasons given, but rather due to her race. (*Id*. at ¶ 11).

Swanson emailed the Executive Offices of PNC Bank regarding the denial. (*Id*. at ¶ 13). Rochelle Bencho, a PNC employee, attempted to call and email Swanson in response to her inquiry, but Bencho and Swanson were unable to get in touch with one another for a period of days. (*Id.* at ¶¶ 13–19). Swanson alleges Bencho deliberately called her home phone when Swanson was at work to avoid her. (*Id.* at ¶¶ 16–17, 20). On July 15, 2020, Bencho and Swanson finally talked on the phone. (*Id.* at ¶¶ 20–21). When Swanson asked about the untrue negative descriptions on PNC's denial letter, Bencho informed her that the denial letter for joint loan applications applies to both loan applicants—Swanson and her nephew Allen. (*Id.* at ¶ 21). Swanson requested a retraction letter regarding the false descriptions of her credit and written documentation of PNC's alleged policy of considering joint applicants' credit together. (*Id.* at ¶ 24). PNC did not issue a retraction letter, but on August 4, 2020, sent Swanson a letter reiterating its policy of considering the credit histories of joint applicants together. (*Id.* at ¶ 27, Ex. 3). PNC explained that it lists all reasons for denial on its denial letter, does not distinguish which applicant's credit history was responsible and sends a letter to each applicant separately. (*Id.*) Unsatisfied with this response, Swanson filed this suit claiming PNC racially discriminated against

2

her when denying her loan application in violation of the Equal Credit Opportunity Act ("ECOA") and her procedural due process rights under the Fourteenth Amendments. (Dkt. 26 at 1–2, ¶¶ 35–36).

## LEGAL STANDARD

When considering a motion to dismiss for failure to state a claim, the Court must construe the complaint "in a light most favorable to the nonmoving party, accept well-pleaded facts as true, and draw all inferences in the non-moving party's favor." *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016). The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The plaintiff need not plead "detailed factual allegations," but the short and plain statement must "give the defendant fair notice of what . . . the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must contain sufficient factual matter that when "accepted as true . . . 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570)). The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Olson v. Champaign Cty, Ill.,* 784 F.3d 1093, 1099 (7th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In reviewing the claims of a *pro se* plaintiff claims, the court construes the allegations liberally. *Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011).

## DISCUSSION

### I. Motion for Substitution

As a threshold matter, Swanson requests the substitution of a judge prior to a ruling on the merits of PNC's motions to dismiss. A federal judge must recuse herself upon a party's showing

of personal bias or prejudice against him. 28 U.S.C. § 144. [1]  Swanson claims this Court has

exhibited consistent bias towards her and cannot give her claim fair consideration.  In support, she

cites to this Court's dismissal of a previous lawsuit Swanson filed, *Swanson v. Baker & McKenzie,*

*et al.*, 16-cv-7890, and the fact that Swanson's status hearing date in this case has been pushed out

twice since PNC's renewed motion to dismiss became ripe for ruling.  First, Swanson raised the

dismissal of her previous case as the basis for her first motion for substitution, which this Court

denied. (Dkt. 7).  As the Court previously observed, the Seventh Circuit affirmed the Court's

dismissal of Swanson's case on the merits and explained that the Court did not engage in

misconduct of any kind. (*Id.*); *Swanson v. Baker & McKenzie, et al.*, No. 17-1069 (7th Cir. Apr.

25, 2017); *see also United States v. Barr*, 960 F.3d 906, 920 (7th Cir. 2020) ("[J]udicial rulings

alone are almost never a valid basis for a recusal motion.") (citing *Liteky v. United States*, 510 U.S.

540, 555 (1994)).  Regarding her status date in the present case, the Court's docket entries make

clear that the status date was moved out due to ongoing trial proceedings rather than any latent

bias or animosity towards Swanson.  (Dkt. 38) (Dkt. 39).  Conducting jury trials during the

pandemic requires the Court to prioritize her time to focus on the efficient resolution of the trial

when citizens are serving their civic duty.  The Court has a heightened duty to complete those trials

as quickly and safely as possible and to avoid any undue delays or prolongment of the citizens'

duty.  The Court moved the status dates of many cases, not only Ms. Swanson's case,  during the

time when a jury trial was being conducted during this pandemic and simply rescheduled them to

be heard after the completion of the trial.  A district court has great discretion over scheduling

matters and Swanson's case was not singled out for rescheduling.  Swanson's motion for

substitution of a judge is denied.

---

[1] Swanson invokes substitution under Illinois law, which is inapplicable here.  As a result, the Court treats her motion for substitution as a motion for recusal under federal law. 28 U.S.C. § 144.

## II. Equal Credit Opportunity Act ("ECOA") Claim

Turning to the merits of Swanson's claims, the factual underpinnings of Swanson's ECOA claim remain the same as when this Court previously dismissed Swanson's original complaint. Swanson claims PNC (1) assumed she was African American based solely on her zip code, (2) denied her loan application relying on stereotypes commonly attributed to African Americans, and (3) attempted to cover up its discrimination by offering post hoc explanations for its denial. Apart from a handful of extraneous facts, Swanson does not allege new factual material in her amended complaint to cure the deficiencies previously identified by this Court. Instead, the amended complaint is replete with new paragraphs of pure argument explaining why this Court's previous dismissal was unwarranted. For the reasons previously articulated by this Court and for the reasons that follow, Swanson's amended complaint remains deficient.

To state a claim under the ECOA, Swanson must "allege … that the [defendant] treated her less favorably because of her race." *Estate of Davis v. Wells Fargo Bank*, 633 F.3d 529 (7th Cir. 2011). Swanson fails to plausibly allege, however, that PNC knew her race when it denied her loan application. At the time of the denial, PNC had no personal contact with Swanson. Rather, Swanson claims PNC must have *assumed* she was African American because it knew her zip code which she submits is an area predominantly habited by African Americans. Even accepting the latter fact as true, however, Swanson does not allege facts indicating that the PNC agents who reviewed Swanson's application would know the demographic makeup of her zip code. As this Court previously observed:

> Swanson does not allege that PNC knew, or took steps to learn, that her zip code was in a predominantly black area. In fact, PNC's credit denial letter shows a return address in Pittsburgh, Pennsylvania. (Dkt. 1 at Ex. 1). Her speculation is even more tenuous in that the Court would need to infer that PNC agents in Pennsylvania somehow know Chicago-area zip codes and their corresponding demographics. In her responsive brief, not in her Complaint, Swanson provides the demographic that

> her zip code, 60617, is over 56.2% African American. (Dkt. 18 at 8). The U.S. Census data also shows that it is 37.2% Hispanic. *See* United States Census Bureau, 2019 American Community Survey 5-Year Estimates https://data.census.gov/cedsci/table?q=ZCTA5%2060617%20and%20Ethnicity&tid=ACSDP5Y2019.DP05&hidePreview=false. Again, the speculation that outsiders know what percentage of African Americans live within a zip code is merely that – speculation – and no facts have been alleged to support that speculation.

*Swanson*, 2021 WL 1209131, at *3. In response, Swanson states:

> Whether Swanson alleged or not that PNC knew that she and her nephew were African American is irrelevant. All banks and even corporate entities have manners of determining the demographics of a neighborhood and even down to the specific applicant. Otherwise, there would never have been lawsuits involving redlining. … These facts are well documented where everybody knows (besides this Court and Defendants' counsel) that banks and lending institutions have always had a way to determine the demographics of any neighborhood, right down to the race of its particular applicant.

(Dkt. 26 at ¶¶ 49–30). The Court does not dispute that PNC had the *ability* to learn the demographic makeup of Plaintiff's zip code. Certainly, everyone with access to the internet has that ability. This ability, however, does not support a plausible inference that PNC knew Swanson was African American, particularly where PNC had no direct contact with Swanson prior to the loan denial and a significant portion of Swanson's neighborhood is also non-Black. And it certainly does not excuse Swanson from plausibly pleading that PNC knew her race at the time of the loan denial.

Moreover, even assuming PNC suspected Swanson was African American, Swanson provides no basis to plausibly infer that PNC denied her loan on the basis of stereotypes associated with her race. At this stage, the Court is bound to accept as true Swanson's assertion that the negative credit descriptions on PNC's denial letter were false. (Dkt. 26 at ¶ 10). This alone, however, does not plausibly suggest race discrimination, particularly where PNC explained that the denial was based on a review of both her and her co-applicant Melvin Allen's credit history.

(*Id*. at ¶¶ 21, 27). Like the original complaint, the amended complaint does not mention Allen's credit score or state that the negative credit descriptors in the denial letter inaccurately described Allen's credit history. To be sure, Swanson was not required to plead this information and claims she does not know the information anyhow (Dkt. 36 at 7), but the fact remains that the amended complaint does not indicate PNC erroneously denied Swanson credit in the first place, detracting from an inference of race discrimination that might otherwise be drawn from the untrue credit descriptions on Swanson's letter. Swanson takes issue with the merits of this policy, claiming that "requir[ing] all credit co-applicants to be able to take care of a loan individually.… defeats the purpose of a co-signer which puts [PNC] in violation of equal protection under the ECOA in the use of a co-signer." (Dkt. 26 at ¶ 47). As support, she cites to Experian's website explaining the role of a co-signer. (*Id*.) Assuming PNC has such a policy in the first instance, the ECOA does not require PNC to apply the same underwriting standards as other financial institutions. While Swanson may dislike and disagree with PNC's policy, requiring each co-applicant to individually meet underwriting standards is not by itself discriminatory.

Moreover, Swanson's interactions with PNC subsequent to the loan denial do not suggest PNC's explanation of considering the credit of co-applicants together was pretextual. Swanson does not claim anyone at PNC made snide or rude remarks to her, posed questions or comments regarding her race, or otherwise treated her in a hostile manner. She characterizes a series of missed phone calls between a PNC representative and herself as a "deceitful game" to cover up racial discrimination (Dkt. 26 at ¶ 16), but without more, this conduct does little to suggest racial discrimination particularly when the representative eventually spoke to Swanson about her complaints. Similarly, Swanson makes much of the fact that PNC did not affirmatively assure her that the negative credit descriptions in the loan denial did not pertain to her individual credit, but

to the credit of her co-applicant. While this may have been better form and the path of least resistance for PNC, PNC's decision not to issue a retraction does not itself suggest race discrimination. At most, Swanson's allegations regarding her interactions with PNC after the loan denial suggest customer service failures, not race discrimination. *See Walton v. First Merchants Bank*, 772 F. App'x 349, 350 (7th Cir. 2019) (plaintiff failed to plausibly plead race discrimination where "[s]he only describe[d] various problems with the Bank's administration of her accounts.").

In an attempt to bolster her factual allegations, Swanson quotes Mayor Lori Lightfoot's promise that "[n]ever again in this city will zip code determine one's destiny" as "proo[f] that everyone besides this Court and Defendants understand that in discrimination and racism, one's zip code determines one's destiny." (Dkt. 26 at 2). She cites scholarly studies proving "that the use of neighborhood race may emerge as the most cost-efficient method [o]f identifying a borrower pool with less risk than a randomly chosen pool as opposed to adhering to the legal guidelines…." (*Id*. at ¶ 35). She recites the history of redlining in this country. (*Id*. at ¶¶ 49–52). This Court acknowledges these realities and the need to police them. But the existence of systemic racism does not make it more plausible that PNC discriminated against Swanson in this case. Swanson's amended complaint fails to allege new factual material, let alone cure the deficiencies previously identified by this Court. The Court does not see the utility in allowing Swanson another chance to amend. Swanson's ECOA claim is dismissed with prejudice.

### III.     Procedural Due Process

In her amended complaint, Swanson attempts to add a procedural due process claim under the Fourteenth Amendment. (*See* Dkt. 26 at 2). Apart from the conclusory statement that "PNC Bank also violated Plaintiff's 14th Amendment rights under the United States Constitution[,]" however, Swanson fails to offer any facts in support of such a claim. The few facts she does allege

seem to be directed at this Court's misconduct, rather than any violation by PNC. (*See id*. at ¶¶ 37–38) (stating due process requires "[a]n unbiased tribunal" and observing that "Plaintiff certainly does not have an unbiased tribunal in the evaluation of her case by this Court."). Moreover, Swanson's due process claim fails on the merits because PNC is not a government entity and Swanson does not allege it engaged in state action when denying her loan. *Hallinan v. Fraternal Order of Police of Chicago Lodger No. 7*, 570 F.3d 811, 815 (7th Cir. 2009) ("To state a claim for violations of the due process clause under the Fourteenth Amendment, there must be state action."). Based on the amended complaint, this Court cannot envision any scenario—and Swanson does not provide one—in which PNC's denial of a car loan application would constitute state action. Swanson's due process claim is thus dismissed with prejudice.

## IV. Sanctions

Finally, PNC moves for sanctions against Swanson for filing a frivolous complaint. [2] As a preliminary matter, PNC's motion is improper in form as it was never filed or served to Swanson as separate motion. *See* Fed. R. Civ. P. 11 ("A motion for sanctions must be made separately from any other motion[.]"). On the merits, although this Court has found, twice now, that Swanson fails to state a claim under the ECOA, her allegations do not rise to the level of being frivolous, particularly considering Swanson's *pro se* status. Swanson does not plausibly plead race discrimination but given the inaccurate descriptions of her credit on PNC's denial letter, it is conceivable why Swanson would believe she had been denied a loan due to her race. There is no indication Swanson brought this suit in bad faith. To the contrary, it is clear from Swanson's

---

[2] PNC moved for sanctions in its motion to dismiss Swanson's original complaint. (Dkt. 13). This Court, however, deferred ruling on this request until after Swanson had an opportunity to respond fully. *See Swanson v. PNC Bank, N.A.*, No. 20 C 6356, 2021 WL 1209131, at *5 (N.D. Ill. Mar. 31, 2021). Swanson filed a response to PNC's motion for sanctions on April 12, 2021. (Dkt. 27).

opposition brief and amended complaint that her belief in the merits of her claims, though inflated, is genuine. As a frequent litigant in this Court, however, Swanson should be mindful of the claims she files in the future, giving due consideration to the fact that a majority of her claims have been dismissed as meritless in the past. [3] PNC's motion for sanctions is denied.

## CONCLUSION

For the reasons stated herein, Swanson's motion for substitution is [40] is denied, PNC's motion to dismiss [33] is granted, and PNC's motion for sanctions [13] is denied. Swanson's amended complaint is dismissed with prejudice.

_____
Virginia M. Kendall
United States District Judge

Date: September 21, 2021

---

[3] *See e.g., Swanson v. Citibank, N.A.*, 614 F.3d 400, 406 (7th Cir. 2010) (reversed on other grounds) (affirming dismissal of claim against bank for falsely purporting to make federal loan funding available to all customers while actually intending to discriminate against African Americans); *Swanson v. Baker & McKenzie, LLP*, 527 F. App'x 572, 573 (7th Cir. 2013) (affirming dismissal of discrimination, retaliation, and defamation claims against former employer based on employer's representation that it could neither confirm nor deny Swanson's employment); *Swanson v. Horseshoe Hammond*, LLC, 445 F. App'x 868, 869 (7th Cir. 2011) (affirming dismissal of claims against casino for detaining Swanson after Swanson asked management to sign and enforce a directive to keep her off the premises due to her gambling addiction); *Swanson v. City of Hammond, Ind.*, 411 F. App'x 913, 914 (7th Cir. 2011) (affirming dismissal of claims against police officers for ignoring her requests for medical attention due to a headache after officers arrested her for criminal trespass at a casino); *Swanson v. Baker & McKenzie, LLP*, 527 F. App'x 572, 573 (7th Cir. 2013) (affirming dismissal of, for a second time, discrimination, retaliation, and defamation claims against former employer based on employer's representation that it could neither confirm nor deny Swanson's employment).